[No. G041666. Fourth Dist., Div. Three. Feb. 25, 2010.]

HUNG TAN PHAN, Plaintiff and Appellant, v.
LANG VAN PHAM, Defendant and Respondent.

**COUNSEL**

Hung Tan Phan, in pro. per., for Plaintiff and Appellant.

Mark Rosen and Dina L. Nguyen for Defendant and Respondent.

**OPINION**

**SILLS, P. J.**—What happens when you receive a defamatory e-mail over the Internet and simply hit the forward icon on your computer, sending it on to someone else? Under *Barrett v. Rosenthal* (2006) 40 Cal.4th 33 [51 Cal.Rptr.3d 55, 146 P.3d 510] (*Barrett*), *you* cannot be held liable for the defamation. The person who *originated* the e-mail can be, of course. Or, to spin the scenario around: If you are defamed in an e-mail and the person who receives the e-mail then simply forwards it on to a friend, your recourse is against the originator of the first e-mail, not the person who hit the forward icon.

That much is clear. *Barrett* was a case where the defendant received an e-mail containing an article from a codefendant (in fact, the article was by the codefendant). The article accused a doctor of stalking. The defendant posted a copy of the defamatory article to a newsgroup Web site. When the doctor sued the defendant for defamation, our state high court, interpreting federal

law,[1] reversed a Court of Appeal decision that had allowed the doctor to sue the defendant for the stalking accusation. The appellate court had reasoned that the federal law did not immunize the defendant as a " 'distributor,' " but the California Supreme Court held the defendant *was* immunized, even as a "distributor." (*Barrett, supra*, 40 Cal.4th at pp. 40–41.)

The case before us now presents an issue adumbrated, but not decided, in footnote 19 of the *Barrett* decision: What happens when you receive a defamatory e-mail and you forward it along, but, in a message preceding the actual forwarded document, introduce it with some language of your own? (See *Barrett, supra*, 40 Cal.4th at p. 60, fn. 19.) As the *Barrett* court noted: "*At some point, active involvement* in the creation of a defamatory Internet posting would expose a defendant to liability as an original source." (*Ibid.*, italics added.) However, because, in *Barrett*, the defendant "made no changes in the article she republished on the newsgroups," the court concluded that it did not need to consider "when that line is crossed." (*Ibid.*)

Was that line crossed in the case before us? Here, the president of the group of veterans from the Navy and Merchant Marine of the Republic of Vietnam sent an e-mail to his fellow veterans,[2] accusing plaintiff Hung Tan Phan of having been disciplined by the Navy of the Republic of Vietnam for abusive behavior during the last days of the Vietnam War.[3] Defendant Lang Van Pham received the e-mail, and sent it on to at least one of his fellow veterans. But he included this introductory paragraph of his own:

"Dear Kmap

"Everything will come out to the daylight, I invite you and our classmates to read the following comments of Senior Duc (Duc Xuan Nguyen) President

---

[1] The Communications Decency Act of 1996, found at 47 United States Code section 230. The immunity portion is found in subsection (c)(1). All further undesignated statutory references to "section 230" or to "(c)(1)" will be to title 47 of the United States Code or to section 230 of title 47, respectively. As the *Barrett* court explained, subsection (c)(1) shields all content providers "from liability for 'publishing' information received from third parties." (*Barrett, supra*, 40 Cal.4th at p. 53.)

[2] The e-mail was written in the Vietnamese language. Plaintiff Hung Tan Phan has provided his own English translation and there is no issue in this case regarding the accuracy of the translation.

[3] Beyond that, there is no need in this case to recount the nature of the comments, or their context. However, a more complete background of Hung Tan Phan's difficulties with his fellow veterans leading to the present case against Lang Van Pham and several others may be found in *Phan v. Vu* (Jan. 13, 2010, No. G041729) (nonpub. opn.).

of the Federation of Associations of the Republic of Vietnam Navy and Merchant Marine."[4]

The issue before the court is whether this introduction is itself enough to remove the immunity that defendant Pham would clearly enjoy under section 230(c)(1) as explained in *Barrett*.

We conclude the line noted by *Barrett* was not crossed under the facts of this case given the "material contribution" test articulated by the Ninth Circuit explicating section 230(c)(1) in the case of *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* (2008) 521 F.3d 1157 (*Roommates*).

The *Roommates* case arose out of a commercial Web site which, held the en banc majority, did online what a real estate broker could not lawfully do in person: ask about the race of a prospective buyer or renter of property. (See *Roommates, supra*, 521 F.3d at p. 1164.) As against a lawsuit from a public interest group based on the site's affirmative inquiries for racial preferences in housing matchups, the Web site had asserted section 230(c)(1) immunity. In a long opinion, the federal appellate court held that the immunity did not attach. In doing so, the court employed a number of formulations that essentially stand for the rule that a defendant's own acts must *materially contribute* to the illegality of the Internet message for immunity to be lost. We quote these formulations in the margin.[5]

---

[4] Phan's English translation put everything after "Senior Duc" in all caps. However, the original Vietnamese did not have anything in all caps, and we have reduced the all caps to normal capitalization for ease of reading.

[5] Here is a compendium of relevant passages:

"Roommate's own acts—posting the questionnaire and requiring answers to it—are *entirely its doing* and thus section 230 of the CDA does not apply to them." (*Roommates, supra*, 521 F.3d at p. 1165, italics added.)

"We believe that both the immunity for passive conduits and the exception for co-developers must be given their proper scope and, to that end, we interpret the term 'development' as referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness. In other words, a website helps to develop unlawful content, and thus falls within the exception to section 230, *if it contributes materially* to the alleged illegality of the conduct." (*Roommates, supra*, 521 F.3d at pp. 1167–1168, italics added.)

"A dating website that requires users to enter their sex, race, religion and marital status through drop-down menus, and that provides means for users to search along the same lines, retains its CDA immunity insofar as it *does not contribute* to any alleged illegality; this immunity is retained even if the website is sued for libel based on these characteristics because the website *would not have contributed materially* to any alleged defamation. Similarly, a housing website that allows users to specify whether they will or will not receive emails by means of user-defined criteria might help some users exclude email from other users of a

One small caveat should be noted in regard to the *Roommates* opinion, at least for our purposes as a California intermediate appellate court. There is a passage in *Roommates* that suggests that one alternate way of phrasing the material contribution test is to ask the question of whether the defendant *enhanced* the illegality of the message (so far so good), but then goes on to further suggest that the mere "affirmative decision to publish" (*Roommates, supra,* 521 F.3d at p. 1171) contributes materially to the illegality of an allegedly unlawful Internet dissemination.[6] Applied to the context of the passing on of an allegedly defamatory e-mail, the passage might be read to suggest that the "affirmative decision" by the recipient to pass on the e-mail is *itself* an enhancement (i.e., material contribution to the illegality of the message), and thus independently actionable despite section 230(c)(1).

The passage from *Roommates* is dicta because the Web site operator there, as the opinion demonstrated at length, did much more than merely make an "affirmative decision to publish." It *created* a Web site "*designed to solicit* and enforce housing preferences that are alleged to be illegal." (*Roommates, supra,* 521 F.3d at p. 1170, italics added.) That is, there a lot of work went into those questions about racial preferences; this was much more than the equivalent of hitting the forward icon.

■ However, even if the passage were not mere dicta, we would be required to part company with it under the doctrine of stare decisis. The California Supreme Court's decision in *Barrett* also involved an "affirmative decision to publish" by a Web site operator, who was under no compunction in that case to post the article accusing the plaintiff doctor of stalking. And our high court squarely held that that decision was immune under section

---

particular race or sex. However, that website would be immune, so long as it does not require the use of discriminatory criteria. A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality. However, a website operator who edits in a manner that *contributes* to the alleged illegality— such as by removing the word 'not' from a user's message reading '[Name] did not steal the artwork' in order to *transform* an innocent message into a libelous one—is *directly involved in the alleged illegality* and thus not immune." (*Roommates, supra,* 521 F.3d at p. 1169, italics omitted and added, fn. omitted.)

[6] Here is the relevant passage: "The distinction drawn by *Batzel* [*v. Smith* (9th Cir. 2003) 333 F.3d 1018, 1026] anticipated the approach we take today. As *Batzel* explained, if the tipster tendered the material for posting online, then the editor's job was, essentially, to determine whether or not to prevent its posting—precisely the kind of activity for which section 230 was meant to provide immunity. And any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230. *See* p. 1171–72 & n. 32 *infra.* But if the editor publishes material that he does not believe was tendered to him for posting online, then *he is the one making the affirmative decision to publish,* and so he contributes materially to its allegedly unlawful dissemination. He is thus properly deemed a developer and not entitled to CDA immunity. *See Batzel,* 333 F.3d at 1033." (*Roommates, supra,* 521 F.3d at pp. 1170–1171, some italics added, fns. omitted.)

230(c)(1). For our purposes, the direct holding of the California Supreme Court trumps Ninth Circuit dicta. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) We need only add that, as the Ninth Circuit itself said in another case, section 230(c)(1) immunity was intended to prevent liability that otherwise would obtain under traditional common law as regards the publication of someone else's material (see *Batzel v. Smith, supra*, 333 F.3d at p. 1026 [§ 230(c)(1) immunity was intended to "override[] the traditional treatment of publishers, distributors, and speakers under statutory and common law"]), a thought consistent with the Supreme Court's decision in *Barrett*.

■ Turning directly to the case at hand and using the material contribution test from *Roommates*, it is evident that defendant Pham made no material contribution to the alleged defamation in the e-mail he received from Duc Xuan Nguyen. His original language, quoted in full above, merely said, in essence: Look at this and "Everything will come out to the daylight." All he said was: The truth will come out in the end. What will be will be. Whatever.

That is, the only possible defamatory content to be found in the e-mail was the original content received by defendant Pham from Duc Xuan Nguyen. Nothing "created" by defendant Pham was itself defamatory.

Following *Barrett*, as did the trial court, we conclude that the judgment dismissing the case, the result of a nonsuit motion when the case came to trial,[7] must be affirmed.

---

[7] The trial judge was particularly solicitous in trying to elicit from plaintiff Phan all the facts that supported his suit against Pham. At oral argument in this appeal, though, Phan (as a pro. per. plaintiff, probably not realizing the difference between a trial and an appellate court) tried to introduce evidence that there was some sort of superior-subordinate relationship between the sender and the receiver of the e-mail here. Judging from his brief, his purpose in doing so was to try to bring this case into a possible exception to the rule in *Barrett* noted by Justice Moreno in his concurring opinion in *Barrett* (see *Barrett, supra*, 40 Cal.4th at pp. 63–66 (conc. opn. of Moreno, J.)) for conspiracies. Phan's explanation for alluding to this belated "evidence" was that he didn't know about the superior-subordinate relationship between the sender and the receiver at the time of trial. Suffice to say here that Phan's failure to offer a satisfactory *explanation* for failing to discover the fact of the alleged "superior-subordinate" relationship prior to trial means that he has waived the issue. (See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206 [37 Cal.Rptr.3d 338] [facts available to plaintiff "throughout the discovery process" and "easily obtainable" should have been included by plaintiff in its opposition to summary judgment motion and hence trial court was without authority to reconsider summary judgment motion].) We thus have no occasion to address any potential application to this case of Justice Moreno's concurring opinion in *Barrett*, namely, that a *conspiracy* between a " 'user' " and a " 'content provider' " would not be within section 230(c)(1)'s statutory immunity. (See *Barrett, supra*, 40 Cal.4th at p. 64.)

Defendant Pham shall recover his costs on appeal.

Rylaarsdam, J., and Ikola, J., concurred.

A petition for a rehearing was denied March 23, 2010, and appellant's petition for review by the Supreme Court was denied May 12, 2010, S181587.